Sam. Milligan, J.,
delivered the opinion of the Court.
This is an action of covenant, against the former Sheriff of Shelby county, and his securities on his officia bond, for the default of his deputy, for failing duly to execute'and return an attachment, issued from the Chancery Court at Memphis, against certain slaves therein named, in the possession of one John B. Turner. The suit, as originally instituted, was “trespass on the case,” in favor of Thomas, and against Mosely, as Sheriff, alone. This action was commenced in January, 1853, and it remained in this form on the docket until November Term, 1858, when, on application of the plaintiff, the form of action was changed to “covenant broken,” and the suit entitled, “The State of Tennessee, for the use of B. R. Thomas and wife, against John B. Mosely, H. L. Guian and W. B. Beckford.” The latter two were the sureties *578 of Mosely, and regularly brought in as parties defendants, by process.
At the March Term, 1859, the action and parties being thus changed, the plaintiffs filed an amended declaration, -in which the breaches assigned in the official bond were, in substance, as follows: 1st, That the slaves mentioned in the attachment were within the view, power and control of the Sheriff, and lie could have taken, seized, levied and kept the same, as commanded: but the said Sheriff, and his deputy, Gilmore, wholly failed, neglected and refused to levy said attachment, or to take and keep the slaves. 2nd, That the said Mosely, by his deputy, did levy upon and take said slaves, and afterwards wil-fully, carelessly and negligently, suffered them to escape, and pass out of his possession and control. 3rd, That he falsely returned on said attachment that said slaves were “not found;” and, 4th, That he made an insufficient return.
'To these several averments and breaches assigned in the declaration, the defendants filed seven separate pleas: 1st, Covenant performed; 2nd, That the slaves in the process directed to be attached were not made known to the Sheriff or liis deputy, whereby the attachment could be levied; 3rd, That said slaves were not within the view of the Sheriff or his deputy, or under his power or control, so that they could be seized or attached; 4th, That Mosely, Sheriff, did not, by his deputy, Vm. D. Gilmore, levy on said slaves; 5th, That the return on the attachment was not a false return; 6th, That it was not, in law, an insufficient return; and, 7th, That the deputy, Vm. D. Gilmore, in whose hands the, process *579 was placed, was prevented from making a levy on said slaves, by the directions, interference and intermeddling of the plaintiff, B. H. Thomas, who assumed the control and management of the levy; and in order to effect a compromise, directed a delay of the execution of the process, whereby the slaves escaped.
Upon these several pleas issues, were regularly joined, and the cause, with some additional amendments, which we deem unnecessary to notice, proceeded to trial, when there was a verdict and judgment for the defendants, and' an appeal in error prosecuted to- this Court.
The proof, which is at all important to notice in determining the questions arising on this record, shows that 'Win. D. Gilmore was the regularly constituted deputy of the defendant, John B. Mosely, and that, as such deputy, he had executed a bond to answer over to the Sheriff for any official misconduct of which he might be guilty; and that the attachment hereinbefore mentioned in this case, came regularly to the hands of the deputy, whereby the Sheriff of Shelby county was commanded “to attach and take into his possession, the slaves, Suekey and family, Eliza and family, Passey, Herbert, Green and Margaret, or any other slaves believed to be bought with the proceeds of the estate of W. H. Turner, or that he (John B. Turner) may have received in exchange for such property.”
There is also proof in the record, tending to show that the deputy, after receiving the process, in company with the plaintiff, Thomas, and Collins, and Dunn, went to the house of John B. Turner, when the deputy Sheriff made his business known to Turner, and read to him the *580 injunction which accompanied the attachment. The slaves were present, on the plantation, and a list of their names was obtained, which was reduced to writing, but no entry was made upon the process.
After this, and in the afternoon of the same day, Gilmore and J. 13. Turner went together into the neighborhood, leaving Collins and Dunn to watch the negroes on the plantation, as it appears, to procure security on a re-plevy bond, which was partly drawn by the deputy .Sheriff, and which Turner purposed to execute for the forthcoming of the negroes. They were unsuccessful, and in the evening of the same day returned to Turner's house, where they remained, together with the plaintiff, Thomas, until morning. During the night the slaves escaped, and they were never recovered.
The next morning, and for several days thereafter, while Gilmore was in pursuit of the slaves, with the process still unindorsecl in his hands, it appears he repeatedly made declarations, tending to prove that he had made the levy, and that the negroes, at the time of their escape, were in the custody of the law; which, when offered as evidence, on the trial, were rejected by the Court, and to which exception was taken at the time.
The Court, among other things, not acceptionable, charged the jury: “That, as had been ruled during the progress of the trial, so he now instructed them, that admissions of the deputy Sheriff, Gilmore, were not evidence against his principal and securities, the defendants in this suit, unless accompanied and made at the same time with acts of his to which the declarations or admissions referred, so as to constitute a part of the transaction, or *581 whafc is termed the res gestee. For this reason, any admissions made by Gilmore, the day after the negroes escaped, that he had levied upon- them the day previous, were not to be regarded as evidence, and should be disregarded by the jury.
“But that while he was engaged in searching for the slaves, with the process in his hands, commanding him to attach or levy on them, declarations relating to the search, or to what he was then doing, should be taken as evidence, but they were not to be taken unless they related to what he was then doing at the time of making the declarations or admissions.”
To this part of the charge, as well as the rulings of the Court below, during the progress of the trial, there are exceptions; and we are called upon to determine how far the declarations and admissions of the under Sheriff may be received as evidence, in an action against the principal Sheriff, for the default or misconduct of his deputy. The admissibility of such declarations, when they tend to charge the deputy, is a well settled principle of law. But the time at which such declarations or admissions must be made, in order to make them admissible evidence against the Sheriff, is the controversy in this case. In 2 Green-leaf on Evidence, § 583, it is said, “that admissions of an under Sheriff, or deputy, tending to charge himself, are receivable in evidence against the Sheriff, whenever the under officer is bound by the record; and he is thus bound, and the record is conclusive evidence against him, both of the facts which it recites, and of the amount of damages whenever he is liable over to the Sheriff, and has been duly notified of the pendency of the action, and required *582 to defend it. This principle applies to all the declarations of the under Sheriff, without regard to the time of making them. But in other cases, where the record is not evidence against the under officer, his declarations seem to be admissible against the Sheriff only when they accompanied the act, which he was then doing in his character of the Sheriff’s agent, and as part of the res gestee, or while the process was in his hands for service.-”
By the Act of 1829, ch. 41, sec. 1, it is provided that, “In all cases where any Sheriff or Clerk, within this State, shall have paid money, or become liable to pay money for the default or misconduct of their deputy or deputies, it shall and may be lawful for said Sheriff or Clerk to recover judgment by motion against such deputy or deputies, and his and their securities, for all such damages and costs that he or they may have sustained, or be liable to pay, in the Circuit Court, where such Sheriff or Clerk may reside, upon satisfactory proof made to the Court of the default or misconduct of said deputy or deputies, by giving him or them ten days’ notice of the time of making the motion.”
From the provisions of the statute, as Avell as upon principles of the general law, it is apparent that this action, although in form against the Sheriff, is subsequently against the deputy, who is identified with him in interest, and immediately answerable, by motion, and to the Sheriff upon his bond, and against whom the record may be used as evidence to establish the claim of the Sheriff against his deputy. The statute itself makes him liable, the provisions of which he is presumed to know, and charges him with notice of any suit instituted against the Sheriff for *583 the default or official misconduct of bis deputy; and duty, as well as interest, impel him, to appear and defend: 1 Green. Ev., sec. 180, and note 3; 2 Starkie Ev., 44, mar.
It follows, therefore, that the declarations or admissions of the deputy Sheriff, tending to charge himself, are receivable in evidence against the Sheriff, whenever the under officer is bound by the record, and is liable, by law, over to the Sheriff, without regard to -the time of making them.
But the rule is otherwise when .the record is not evidence against the under -officer. . In such cases, his declarations are admissible against the Sheriff, only when they accompanied the act, which he was then doing, as in his character of the Sheriff’s agent, and as, a part of the res gestee, or while the process was in his hands for service. Tyler vs. Ulmer, 12 Mass. R., 162; Mott et al vs. Kip, Sheriff, etc., 10 John R., 489; 2 Greenleaf on Ev., sec. 583; 1 Greenleaf on Ev., sec. 180, note 3, and authorities there cited.
Applying these principles to the case under consideration, and it is manifest that the Court below erred in excluding from the jury all the declarations and admissions of the Deputy Sheriff, tending to charge himself, except those which constituted a part of -the res gestee, and actually accompanied the act to which they referred.
Objection is taken to the sufficiency of the release executed by J. B. Mosely to his deputy, Gilmore, in order to remove his incompetency as a witness. The release, upon its face, purports to have been made in consideration of ten dollars, in hand paid; and it is a full and formal discharge of all liabilities of the deputy to the principal *584 Sheriff, on account of the default or official misconduct of the former. It is under seal, and its execution sufficiently proven.
But it is insisted, inasmuch as it was executed alone by the Sheriff, it did not have the effect to remove the witnesses liability to the securities of the Sheriff in his official bond. We do not concur in this argument. Mosely, the Sheriff, was elected on the “first Saturday” in March, 1848, and on the 3rd of April, thereafter, he gave his bond; and on the 1st day of January, 1849, he appointed his deputy, and took from him a bond, in the penal sum of $-, to indemnify and hold him and his securities harmless for the official misconduct, or neglect, or omission of duty of the deputy. The bond is executed alone to the Sheriff, and the liability of the deputy over to the securities of the Sheriff, whose responsibility was fixed nearly a year prior to the time at which the deputy executed his bond, is, in our opinion, too remote and uncertain to disqualify the witness on account of interest. The liability must be direct and immediate to the party. If the witness is liable to a third person, who is liable to the party, such circuity of interest is no legal ground of exclusion: 1 Greenleaf on Ev., sec. 394.
But admitting the sufficiency of the release, it is argued that the witness, at the time of delivering his testimony, did not have knowledge of its execution. If this be true, which is a matter to be shown by the proof, the objection is a valid one. The object and purpose of a release is, to free the mind of the witness from all motives to favor his own interest by his testimony; and if he is incompetent, on account of interest, and can only be made *585 so by a release, and although it may be executed, and the witness has no knowledge of its execution at the time he gives his testimony, it is obvious it can have no influence over his mind, and must of necessity, be wholly ineffectual in removing his incompetency.
Various other exceptions were taken to the admissibility of the testimony, which we do not deem it necessary further to notice.
Judgment reversed, and a new trial awarded.